UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD NICHOLSON,<br>     Petitioner,<br>  v.<br>RENEE BAKER, *et al.*,<br>     Respondents. | Case No. 3:16-cv-00486-MMD-CSD<br><br>ORDER |

**I. SUMMARY**

In this habeas matter, Respondents filed a motion to dismiss (ECF No. 72) that is before the Court. Petitioner Richard Nicholson opposed (ECF No. 74) and Respondents have replied (ECF No. 76). Also before the Court is Nicholson's motion for evidentiary hearing (ECF No. 75). For the reasons discussed below, Respondents' motion is granted in part and denied in part, and Nicholson's motion is denied.

**II. BACKGROUND**

Nicholson challenges a 2010 conviction and sentence imposed by the Eighth Judicial District Court for Clark County. In June 2006, police officers responded to a family disturbance call and Nicholson was charged with striking his ex-girlfriend and her teenage daughter with a baseball bat. (ECF Nos. 3, 41-2.) Within weeks, Nicholson's appointed counsel requested a competency determination. (ECF No. 11-5.) Although Nicholson was found competent, trial counsel continued to question his competency as the case moved forward. (ECF Nos. 11-9 at 28, 12-14, 12-17, 39-1, 39-2.) On February 5, 2007, Nicholson pleaded not guilty. (ECF No. 11-17.)

Following a two-day trial, a jury returned a guilty verdict in May 2009. (ECF No. 12-24.) Trial counsel revisited the issue of Nicholson's competency in July 2009. (ECF

No. 11-9 at 37.) New counsel was appointed the following month, and she also doubted Nicholson's competency. (ECF Nos. 11-9 at 38, 13-5.) Doctors reported some decomposition in new evaluations. (ECF No. 39-3.) Thus, in June 2010, the state court committed Nicholson to receive treatment. (ECF No. 13-7.) Three months later, he completed treatment and was found competent to complete his case. (ECF No. 13-13.)

Sentencing went forward, and the state court entered a judgment of conviction on November 10, 2010, giving Nicholson an aggregate sentence of 17 to 50 years in prison.[1] Nicholson appealed. On September 29, 2011, the Nevada Supreme Court affirmed Nicholson's conviction on direct appeal. (ECF No. 14-8.)

Nicholson filed a *pro se* state petition for writ of habeas corpus ("state petition") on January 26, 2012, seeking post-conviction relief. (ECF No. 14-13.) Counsel was later appointed, and Nicholson filed a counseled supplemental petition. (ECF No. 14-19.) The state court held an evidentiary hearing and denied the state petition. (ECF Nos. 16-14, 16-28.) Nicholson appealed. The Nevada Court of Appeals affirmed the state court's denial of relief. (ECF No. 18-27.) A remittitur issued on November 4, 2015. (ECF No. 18-

---

[1]

| Count | Charge | Sentence |
|---|---|---|
| Count 1 | Burglary while in possession of a deadly weapon | 48-120 months |
| Count 2 | Battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm | 60-180 months, concurrent with Count 1 |
| Count 3 | Battery constituting domestic violence with use of a deadly weapon resulting in substantial bodily harm | 60-180 months, consecutive to Count 2 |
| Count 4 | Child abuse and neglect with substantial bodily harm | 60-180 months, consecutive to Count 3 |
| Count 5 | Child abuse and neglect | 24-60 months, consecutive to Count 3 |
| Count 6 | Child abuse and neglect | 24-60 months, concurrent with Count 5 |

(ECF Nos. 13-17, 13-18.)

28.)

Nicholson mailed the original federal petition initiating this case on August 8, 2016. (ECF No. 5 at 1 ("original petition").) The Court later appointed counsel and granted Nicholson leave to amend the petition. (ECF No. 25.) He filed a counseled first amended petition for writ of habeas corpus (ECF No. 38 ("amended petition")) on March 5, 2019, alleging four grounds for relief.

Respondents moved to dismiss certain claims as untimely and/or unexhausted. (ECF No. 45.) The Court granted Respondents' motion to dismiss in part finding Ground I of the amended petition untimely and Ground IV unexhausted, but deferred Nicholson's actual innocence claim until he addressed the mixed nature of the amended petition, and this case thereafter is postured for merits review. (ECF No. 55.) Nicholson filed a motion for stay and abeyance to return to state court and the Court granted his motion. (ECF Nos. 56, 58.)

In September 2019, Nicholson returned to state court, filing a counseled successive state petition for writ of habeas corpus alleging one claim for relief. (ECF No. 65-4.) His single claim for relief alleged that trial counsel rendered ineffective assistance for failure to investigate and present defenses and mitigation based on Nicholson's mental health and mental health state in violation of his Sixth and Fourteenth Amendment rights. (*Id*. at 20.) The state court denied his second state habeas petition as time-barred under NRS § 34.726(1), successive under NRS § 34.810(2), and further held that Nicholson failed to present a colorable claim of actual innocence. (ECF No. 65-14.)

Nicholson appealed. On appeal, he alleged that (1) he was insane at the time of the crime and, therefore, demonstrated actual innocence; (2) that trial counsel was ineffective for failing to investigate and present defenses and mitigation based on his mental health and mental state, in violation of his Sixth and Fourteenth Amendment rights; and (3) the state appellate court should remand for an evidentiary hearing. (ECF No. 65-

22.) The Nevada Court of Appeals affirmed that his second state habeas petition was untimely and successive. (ECF No. 65-35.)

The Court reopened this case in February 2021 upon Nicholson's request. (ECF Nos. 59, 60.) Nicholson filed a second amended petition and Respondents filed a motion to dismiss. (ECF Nos. 61, 64.) The parties entered a stipulation to allow Nicholson to file a third amended petition to clarify Ground 1. (ECF No. 69.) In December 2021, Nicholson filed his third amended petition. (ECF No. 71.) Respondents now seek to dismiss Ground I as untimely, Ground III as unexhausted, and Ground IV as procedurally barred. (ECF No. 72.)

## III. DISCUSSION

### A. NICHOLSON HAS NOT ESTABLISHED ACTUAL INNOCENCE

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *See Schlup v. Delo*, 513 U.S. 298, 314-16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare. *See McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no

reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *See id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Nicholson argues that his demonstration of actual innocence overcomes procedural defects including the timeliness of Ground I, in addition to Respondents' arguments regarding the exhaustion of Ground III and procedural default of Ground IV.[2] (ECF No. 74 at 5.) He asserts that due to his diagnosed schizophrenia and other mental illnesses that he was "probably insane at the time of the purported offenses, and thus probably innocent." (*Id.* at 14.) He contends that the new items of evidence, including Nicholson's competency evaluations and Clark County Detention Center ("CCDC") medical and psychological records noting that Nicholson reported "auditory hallucinations command type to kill self and others," demonstrate that he was insane and could not form the requisite intent. (ECF Nos. 41-1 at 66-67, 74 at 12-15.)

Under Nevada law, criminal defendants are presumed to be legally sane, and, to prevail with an insanity defense, must overcome that presumption with a preponderance

---

[2]In its April 7, 2020, order granting in part Respondents' motion to dismiss, the Court deferred consideration of Nicholson's actual innocence claim until he addressed "the mixed nature of the Amended Petition and this case thereafter is postured for merits review." (ECF No. 55 at 5.) The Court, however, finds that there is an adequate record to address Nicholson's actual innocence claim herein.

of the evidence. *See Williams v. State*, 885 P.2d 536, 538 (Nev. 1994). Nevada recognizes the defense of legal insanity and applies the *M'Naghten* rule. *See, e.g., Miller v. State*, 911 P.2d 1183, 1185 (Nev. 1996). Under the *M'Naghten* rule, the jury determines whether the defendant "knew the nature and quality of [his] acts, had the capacity to determine right from wrong or whether [he] was doing wrong when [he] committed the crime." *See Clark v. State*, 588 P.2d 1027, 1029 (Nev. 1979). "To qualify as being legally insane, a defendant must be in a delusional state such that he cannot know or understand the nature and capacity of his act, or his delusion must be such that he cannot appreciate the wrongfulness of his act, that is, that the act is not authorized by law." *Finger v. State*, 27 P.3d 66, 84-85 (Nev. 2001). "The fact that a person had mental health problems did not necessarily mean that he or she could meet the *M'Naghten* test for insanity." *Id*. at 72.

### 1. EVIDENCE AT TRIAL

At trial, the State called Nicholson's ex-girlfriend, Lula Jack, to testify and she testified that she dated Nicholson in 2005. (ECF No. 12-21 at 35.) Nicholson and his ex-girlfriend moved in together and lived with Jack's three daughters. (*Id*.) The relationship broke down and Nicholson moved out of the house. (*Id*. at 36.) About four or five days after Nicholson moved out, Nicholson returned to the house to retrieve his belongings, which Jack had put in the garage for him to pick up. (*Id*.)

Jack further testified that Nicholson began to bang on a window because a package was missing from his belongings. (*Id*. at 37-38.) After hearing a shattering noise from the back sliding glass door, Jack and her 16-year-old daughter ran upstairs. (*Id*. at 38.) Jack's other two daughters, who were 13 and seven-years-old, were already upstairs. (*Id*.) Jack and her daughter ran into her master bedroom and locked the door behind them. (*Id*. at 39.) Jack testified that Nicholson kicked in the bedroom door and began to hit her face. (*Id*.) Jack's daughter grabbed an aluminum bat that Jack left in her bedroom,

hit Nicholson with the bat, and her and Nicholson began to fight over the bat. (*Id*. at 40.) Jack's daughter ran downstairs. (*Id*.)

Jack testified that she also ran downstairs and observed Nicholson striking her daughter with the bat. (*Id*. at 41.) Jack laid on top of her daughter to shield her from being hit with the bat and Nicholson continued to strike both of them with the bat. (*Id*. at 41.) While being struck, Jack observed her two other daughters standing on the stairs and instructed them to call the police. (*Id*.) Jack testified that Nicholson told her younger daughters not to call the police or they were "going to get the same thing." (*Id*.)

The State called Jack's daughter to testify about the event, the phone call she placed to 911, and her injuries. (ECF No. 12-22 at 10-16.) The State also presented testimony from two treating physicians as to Jack's injuries. (ECF No. 12-21 at 49.)

The State called Officer Sabino to testify at trial. (ECF No. 12-22 at 4.) Officer Sabino testified that he was dispatched to the scene and was informed that the suspect may still be present. (*Id*.) Officer Sabino approached the house on foot. (*Id*. at 5.) Officer Sabino observed the garage door opening and Nicholson walked out of the garage holding an aluminum baseball bat. (*Id*.) Officer Sabino described Nicholson as 6'7" tall, 270 lbs., and that he appeared obviously angry from his actions and demeanor. (*Id*.) Officer Sabino instructed Nicholson to drop the bat, put his hands in the air, and lay on the ground. (*Id*.) Nicholson complied and dropped the bat. (*Id*.) Nicholson turned away from Officer Sabino, dropped on his knees, but did not lay further on his stomach. (*Id*.) Officer Sabino placed his foot in the middle of Nicholson's back to push him to the ground to put him in custody. (*Id*. at 6.)

At trial, counsel for Nicholson argued that that there was insufficient evidence to convict Nicholson and that he was acting in self-defense. (*Id*. at 29-31.) Trial counsel highlighted that at the preliminary hearing, Jack's daughter testified that she picked up the bat and hit Nicholson on the forehead when he was coming around a corner and

presented photographic evidence of the welt on his forehead. (*Id*. at 30.) Trial counsel further highlighted that Jack's daughter was kicking Nicholson in the groin when they were both downstairs. (*Id*.) Trial counsel argued that Nicholson did not take any action towards the two younger daughters and that there was inconsistent testimony as to whether the two younger daughters were in the room to observe the event. (*Id*.)

### 2. NEWLY PRESENTED EVIDENCE

In July 2006, Nicholson's trial counsel requested a competency evaluation. (ECF No. 11-5 at 3.) Nicholson's CCDC medical records indicate "suicide attempt x2." (ECF No. 41-1 at 82.) On July 30, 2006, Nicholson reported occasional auditory hallucinations and under the delusions category, the medical professional indicated a question mark as to the presence of paranoid delusions. (*Id*. at 83.) Further, the July 30, 2006, record appears to indicate a diagnosis of schizophrenia. (*Id*.) The state court referred to reports by Dr. Harder and Dr. Chambers finding Nicholson capable of understanding the nature of the charges against him and that he had the ability to assist counsel in his defense. (ECF No. 11-9 at 2.)

In August 2007, Nicholson failed to appear for calendar call and subsequently was arrested on a bench warrant. (ECF No. 12-14 at 3.) In October 2008, Dr. Harder evaluated Nicholson at the request of his trial counsel. (*Id*. at 9.) Dr. Harder found Nicholson competent to stand trial. (*Id*. at 10.) During the evaluation, Nicholson "admitted to hearing voices in his head in the past, but denied suicidal ideation." (*Id*. at 11.) Dr. Harder concluded that Nicholson was "borderline competent to stand trial" and that he understood "his charges and the facts of the case." (*Id*.) Nicholson, however, "has a history of psychosis, has been to Lakes Crossing before, and states rather emphatically that [he] has videotape evidence proving his innocence, that the feds and the attorney general are investigating his case because of the bogus charges, and seemed rather grandiose that he was going to win his case without question and that everything would

be revealed in court to clear his name." (*Id.*) Dr. Harder further commented that he was unaware if Nicholson had any evidence or witnesses as he claimed, "so it is questionable if [Nicholson] is delusional or not." (*Id.*) Due to "some possibilities that [Nicholson] is delusional," Dr. Harder found that a second opinion was warranted. (*Id.* at 12.)

In October 2008, Nicholson consented to the administration of medication, Risperdal, to which Nicholson asserts is an antipsychotic medication that treats schizophrenia and bipolar disorder. (ECF Nos. 41-1 at 78, 71 at 28.)

On December 2, 2008, at calendar call, trial counsel informed the state court that defense was not ready to proceed because Nicholson has not provided a list of witnesses. (ECF No. 39-2 at 3.) Trial counsel further provided that Dr. Harder found Nicholson "a borderline candidate for competency" and that if Nicholson does not have a defense, "maybe he is delusional." (*Id.* at 5-6.) Upon questioning from the court, Nicholson responded that he has over 36 witnesses for his case. (*Id.* at 7.)

On December 11, 2008, CCDC medical records indicate Nicholson experienced auditory hallucinations. (ECF No. 41-1 at 91.) On January 30, 2009, the record indicates that Nicholson denied hallucinations and continued to refuse medications. (*Id.* at 71.)

In February 2009, trial counsel filed a motion to suspend proceedings pending a determination as to Nicholson's competency to stand trial. (ECF No. 12-14.) Trial counsel attached Dr. Harder's evaluation and represented that Nicholson was being housed in the psychiatric ward of CCDC. (*Id.* at 3, 9-12.) Trial counsel further argued that he pressed Nicholson for a list of witnesses and other evidence and has not received any of the requested information. (*Id.* at 4.)

In February 2009, CCDC medical records indicate that Nicholson presented poor eye contact and reported "auditory hallucinations command type to kill self and others," in addition to poor sleep "due to voices." (ECF No. 41-1 at 67.) On February 19, 2009, a report indicates that Nicholson covered his door with his mattress. (*Id.* at 63.) When asked

to take down his mattress, Nicholson threw feces on the door. (*Id*.) Nicholson sat on his bunk and when his name was called, Nicholson covered his face and was mute, did not make eye contact, and was nonresponsive. (*Id*.)

Dr. Harder evaluated Nicholson on March 2, 2009, finding "schizophrenia, undifferentiated chronic." (ECF No. 41-2 at 4.) Dr. Mortillaro also evaluated Nicholson on March 7, 2009, finding schizophrenia, depression, and anti-social personality traits. (*Id*.) Nicholson, however, was competent to stand trial and trial commenced in May 2009. (ECF Nos. 12-17 at 3, 12-21.) During jury selection, Nicholson interrupted the court. (ECF Nos. 12-21 at 8, 71 at 33-4.) A potential juror asked if Nicholson was mentally challenged. (*Id*.)

In May 2010, after trial and before sentencing, the state court set another competency hearing. (ECF No. 39-3.) The court noted that Dr. Chambers and Dr. Mortillaro found Nicholson competent in March 2009, "although they did indicate a number of concerning diagnoses, including Axis 1 diagnoses at that time. Those same diagnoses are present this time, but it would appear, pursuant to the reports, there's been obviously some pre-competency in some regards to Mr. Nicholson's mental status such they both found him not competent at this time." (*Id*. at 5.) The state court referred Nicholson to Lakes Crossing. (*Id*.) In September 2010, the state court ruled Nicholson was competent and ordered his transport from Lakes Crossing to CCDC. (ECF Nos. 13-12, 13-13.)

Nicholson argues that this evidence shows that Nicholson "probably 'was laboring under such a defect of reason . . . as to not know the nature and quality of the act he was doing; or if he did know it, that he did not know he was doing what was wrong' due to his diagnosed schizophrenia and other mental defects."[3] (ECF No. 76 at 15.) The newly

---

[3] Nicholson also argues that if Nevada's insanity standard is limited to instances of delusion, then Nevada law "unconstitutionally limit[s] the insanity defense below that which the federal constitution requires states to provide." (ECF No. 74 at 10-12.)

10

presented evidence, however, does not demonstrate that it is more likely than not that no reasonable juror would have found Nicholson guilty beyond a reasonable doubt. This evidence, considered in light of all of the evidence, would not lead a reasonable juror to conclude that Nicholson could not form the intent necessary to commit the crimes of which he was convicted.

The newly presented evidence shows that Nicholson reported auditory hallucinations and that he was diagnosed with schizophrenia. (ECF No. 41-1 at 83.) Upon evaluation, Nicholson was nonetheless deemed competent to stand trial in July 2006. (ECF No. 11-9 at 2.) The majority of the evaluations and/or reports documenting Nicholson's mental state, however, occur at least one year after the date of the crime. *See Griffin v. Johnson,* 350 F.3d 956, 965 (9th Cir. 2003) (psychiatric evaluation that was years apart from the crime was of minimally probative value in establishing mental state at time of the crime). In October 2008, upon evaluation, Dr. Harder found that it was "questionable" as to whether Nicholson was delusional. (ECF No. 12-14 at 11.) Upon evaluation in June 2010, Nicholson was determined to be incompetent for the sentencing phase of his trial, and was sent to Lakes Crossing for treatment, whereupon he was determined to have regained his competency after three months of treatment. (ECF Nos. 13-7, 13-13.) Even if the newly presented evidence demonstrates that Nicholson had a mental illness at the time that his evaluations and/or treatment took place, it is clear that "[t]he fact that a person had mental health problems did not necessarily mean that he or she could meet the *M'Naghten* test for insanity." *Finger*, 27 P.3d at 72. In short, the

---

Nicholson cites *Clark v. Arizona*, 548 U.S. 735 (2006), and *Kahler v. Kansas*, 140 S. Ct. 1021, in support of his argument. (*Id*. at 10-11.) The United States Supreme Court, however, explained in *Clark* that there is no particular standard for insanity required as a matter of federal due process. *See* 548 U.S. at 748-49 ("the insanity rule, like the conceptualization of criminal offense, is substantially open to state choice"). Further, the Court confirmed that states are allowed to use different definitions of insanity in *Kahler*, holding that due process did not require Kansas to adopt a particular insanity test, used in some other jurisdictions, that turned on a defendant's ability to recognize that his crime was morally wrong. *See* 140 S. Ct. at 1027.

newly presented evidence does not convincingly undermine the State's case such that it is more likely than not that no reasonable juror would have convicted Nicholson.

Moreover, there was evidence at trial that undermined the contention that the crimes were a product of insanity. Nicholson went to Jack's residence to pick up his belongings and Jack testified that Nicholson became "belligerent" when he was unable to locate a package. (ECF No. 12-21 at 38.) Nicholson struck Jack and chased her daughter downstairs when her daughter hit him with an aluminum bat. (*Id*. at 40.) Nicholson instructed Jack's younger two daughters not to call the police when Jack told them to do so. (*Id*. at 41.) Officer Sabino testified that he observed Nicholson leaving the house with a satchel and holding an aluminum bat. (ECF No. 12-22 at 5.) Nicholson complied with Officer Sabino's instructions to drop the bat upon his arrest. (*Id*.)

The Court finds that Nicholson has not established a convincing showing of actual innocence to overcome the procedural default or statute of limitation bars of his claims.

### B. GROUND I

As the Court explained in its earlier order, Ground I is subject to dismissal as untimely because it does not relate back to ground 1(b) of Nicholson's original petition that was timely filed. (ECF No. 55 at 5.) The Court found that original ground 1(b) is based on the alleged errors in the jury instructions on reasonable doubt and/or elements of child abuse and neglect offenses and trial counsel's performance in relation to the jury instructions, whereas amended Ground I is based on alleged insufficiency of the evidence presented at trial. (*Id*.) Although the claims share a common fact, the Court found that the operative facts and the Court's examination are markedly different. (*Id*.) Nicholson argues that actual innocence overcomes any procedural defects including the timeliness of Ground I. (ECF No. 74 at 5.) Because the Court found that Nicholson has not established a convincing showing of actual innocence, Ground I is dismissed as untimely.

### C. GROUND III

In Ground III, Nicholson alleges that his trial counsel rendered ineffective assistance for failing to object to an unconstitutional reasonable doubt instruction. (ECF No. 71 at 21-25.) Nicholson asserts that Ground III is technically exhausted and that this claim would be denied on state procedural grounds if he returned to state court to present it. (*Id*. at 21.) Respondents argue that because Nicholson returned to state court and failed to set forth his claim presented in Ground III in his second state habeas petition, his claim remains unexhausted and must be dismissed. (ECF No. 72 at 11.)

In his opposition, Nicholson asserts that, due to an oversight, he failed to include Ground III in his second state habeas petition. (ECF No. 74 at 17-18.) He argues that nonetheless Ground III is exhausted because had he included it in his second state habeas petition, it would have been treated as defaulted as untimely and successive. (*Id*. at 18.) Nicholson further argues that Respondents waived the argument that Ground III is procedurally defaulted because they did not raise it as an affirmative defense in their motion to dismiss. (*Id*. at 19.)

A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750.

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to

excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754-55). However, in *Martinez v. Ryan*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *See* 566 U.S. 1, 16-17 (2012). "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). Nevada law requires prisoners to raise ineffective assistance of counsel claims for the first time in a state petition seeking post-conviction review, which is the initial collateral review proceeding for the purposes of applying the *Martinez* rule. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

      Here, it is clear that Nicholson would face multiple procedural bars if he were to return to state court with his unexhausted claim. *See, e.g.*, NRS §§ 34.726, 34.810. However, Nevada procedural bars can be excused with a showing of cause and prejudice or a fundamental miscarriage of justice (i.e., actual innocence), which are substantially the same as the federal standards. If a petitioner has a potentially viable cause-and-prejudice or actual-innocence argument under the substantially similar federal and state standards, then the petitioner cannot firmly establish that "the state court would hold the claim procedurally barred." *Sandgathe*, 314 F.3d at 376. A different situation is presented, however, where the Nevada courts do not recognize a potential basis to overcome the procedural default arising from the violation of a state procedural rule.

      Accordingly, a Nevada habeas petitioner who can rely upon *Martinez*, and only *Martinez*, as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that she nonetheless has a potentially viable cause-and-prejudice argument under federal law

that would not be recognized by the state courts when applying the state procedural bars.

In the present case, Nicholson has invoked *Martinez* to overcome a procedural default of the unexhausted ineffective assistance of trial counsel claim in Ground III. As the state courts have already denied Nicholson's actual innocence argument, it appears that Nicholson has no other potentially viable bases for demonstrating cause and prejudice that might be recognized by the state courts and that thus would preclude a finding of technical exhaustion by procedural default as to the unexhausted claim. (ECF Nos. 65-14, 65-35 at 3-5.)

The Court will defer an analysis of cause and prejudice under *Martinez* of Ground III until after the filing of an answer and reply that address both cause and prejudice and the claims on the merits. The Court may then have the benefit of its analysis of a full factual and legal presentation as to all relevant claims.[4] Accordingly, Respondents' motion is denied without prejudice as to Ground III. Respondents may renew their procedural default arguments in their answer.

**D. GROUND IV**

In Ground IV, Nicholson alleges that trial counsel rendered ineffective assistance for failing to investigate and present defenses and mitigation based on Nicholson's mental health and mental state. (ECF No. 71 at 25-39.) Respondents argue that Ground IV must be dismissed as procedurally barred because the Nevada Court of Appeals affirmed the state district court's ruling that Nicholson's second state habeas petition was untimely and

---

[4]The Court notes that the action taken herein is premised upon Nicholson having a potentially viable cause and prejudice argument based upon *Martinez*, and only *Martinez*, as opposed to having also potentially viable cause and prejudice arguments based upon grounds that the state courts would recognize. If Nicholson begins arguing any such additional cause and prejudice arguments herein, that immediately will "kick" this case back into a procedural posture where the next step instead is dictated by *Rose v. Lundy* and its progeny. That is, the Court's action is taken on the premise that the unexhausted claims are technically exhausted by procedural default because Nicholson has no potentially viable cause and prejudice (or actual innocence) arguments that the state courts would recognize as a basis for overcoming the state procedural bars.

successive. (ECF No. 72 at 12.) Nicholson acknowledges that the state court rejected his claim in Ground IV and argues that he can demonstrate good cause and prejudice under *Martinez* to excuse procedural default. (ECF No. 74 at 20-24.) Similar to Ground III, the Court finds that the cause and prejudice analysis of Ground IV is necessarily connected to the merits of the claim itself and will defer a determination on both questions until a merits determination. Respondents' motion as to Ground IV is therefore denied without prejudice on those grounds. Respondents may renew their procedural default arguments in their answer.

### IV.     MOTION FOR EVIDENTIARY HEARING

Nicholson moves for an evidentiary hearing on his gateway claim of actual innocence, and, in the alternative, whether he can overcome procedural default under *Martinez* (ECF No. 75). Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise"); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). Nicholson does not show that factual development by an evidentiary hearing is warranted. The Court resolves Nicholson's argument of actual innocence on the briefing of the parties and on the extensive record before the Court without need for further factual development.

With regard to the question of whether any of Nicholson's claims are barred by the procedural default doctrine, as explained above, the Court will not address those issues until the parties have filed their answer and reply, and the merits of all of Nicholson's

remaining claims have been briefed. Therefore, Nicholson's request for an evidentiary hearing concerning issues related to excusing procedural default under *Martinez* will be denied without prejudice.

## V.  CONCLUSION

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 72) is granted in part and denied in part as follows:

1. Ground I is dismissed as untimely.
2. Respondents' request to dismiss Grounds III and IV is denied without prejudice. A decision on whether Nicholson can demonstrate cause and prejudice under *Martinez* as to Grounds III and IV is deferred until the time of merits review. Respondents may reassert the procedural default arguments with respect to those claims in their answer.

It is further ordered that Nicholson's Motion for Evidentiary Hearing (ECF No. 75) is denied.

It is furthered ordered that within 30 days of entry of this order, Respondents must file an answer addressing all remaining claims in the third amended petition for writ of habeas corpus and also addressing whether Grounds III and IV are barred by procedural default under federal law.

It is furthered ordered that Nicholson will have 30 days from service of the answer within which to file a reply.

DATED THIS 23rd Day of May 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE